IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

## B-02- 167-CV
Fernando Hernandez, Movant

vs.

United States of America

*****************
Movant's Brief in Support of Motion Attacking Sentence by
Prisoner in Federal Custody; Motion pursuant to 28 U.S.C.2255
*****************

United States District Court
Southern District of Texas
FILED

SEP 0 4 2002

Michael N. Milby
Clerk of Court

BY:

LARRY WARNER
COUNSEL FOR Movant
777 EAST HARRISON
BROWNSVILLE, TEXAS   78520
PHONE (956)542-4784
FAX    (956)544-5234
STATE BAR# 20871500
USDC,SDTX #1230

Pursuant to FED.R.APP.P.26.1 and 5TH CIR.R.28.2.1, Movant provides the following:

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judge(s) of this Court may evaluate possible disqualifications or recusal. Counsel certifies that this is a complete list of all persons, associations or persons, firms, partnership(s), corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities who or which are financially interested in the outcome of the litigation. This certificate lists the names of opposing law firms and/or counsel in the case. It includes all information called for by FED.R.APP.P.26.1(a).

The Movant was tried before a jury before the Honorable Filemon B. Vela , United States District Judge.

Movant was represented at trial by Mr. Richard Rodriguez  of 1117 East Harrison, Harlingen, Texas 78550.

The Plaintiff, the United States of America, was represented at trial by Assistant United States Attorneys Joe Esquivel and Trey Martinez, United States Courthouse, 600 East Harrison Street, Brownsville, Texas, 78520, Attorneys for Government at trial.

Mr. Warner represented Movant on appeal. Mr. Warner's address is 777 East Harrison, Brownsville, Texas 78520

Ms. Kathy Snider, Asst. United States Attorney, of Houston,

represented the Government on appeal. Her address is Box 61129, Houston, Texas 77002. The attorney in charge of the appellate division is Asst. United States Attorney James Turner; his address is Box 61129, Houston, Texas 77002.

Mr. Warner represents Movant on his Motion Attacking Sentence by Prisoner in Federal Custody; Motion pursuant to 28 U.S.C.2255. Mr. Warner's address is 777 East Harrison, Brownsville, Texas 78520.

Asst. United States Attorney James Turner of Houston, customarily represents the Government on such Motions. His address is Box 61129, Houston, Texas 77002. He is the attorney in charge of the appellate division.

Respectfully submitted this September 4, 2002

_____
Larry Warner
Counsel for Movant
777 East Harrison. 2nd Floor
Brownsville, Texas  78520
Phone(956)542-4784 Fax (956)544-5234
State Bar# 20871500
USDC, SDTX # 1230

Pursuant to FED.R.APP.P.26.1 and 5TH CIR.R.34.2, Movant provides the following:

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Warner is prepared to present oral argument in the District Court as the Court may direct.

Pursuant to FED.R.APP.P. 28(a), Movant provides:

## TABLE OF CONTENTS

<u>CASES</u>                                                            <u>PAGE</u>

CERTIFICATE OF INTERESTED PERSONS  . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . iv

TABLE OF CONTENTS   . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . iv-vii

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . viii-ix

STATEMENT OF ISSUES PRESENTED   . . . . . . . . . . . . . . . x

    Is the Motion timely?  . . . . . . . . . . . . . . . 10

    Was counsel ineffective?   . . . . . . . . . . . 3,4,10

        1.   Was counsel ineffective for failing to request an instruction on the culpable mental state for an accomplice?

        2.   Was counsel ineffective for failing to move to suppress the Movant's statement when there was no reasonable suspicion to stop?

        3.   Was counsel ineffective for failing to move to suppress the marijuana when there was no reasonable suspicion to stop?

        4.   Was counsel ineffective for failure to object to the admission of the grand jury testimony of the agent as an out-of-court statement admitted for its truth which went to a central issue, whether there was an oral confession or not?

STATEMENT OF THE CASE   . . . . . . . . . . . . . . . . . . 1-2

SUMMARY OF THE ARGUMENT   . . . . . . . . . . . . . . . . . . 3

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . 4-18

CONCLUSION STATING PRECISE RELIEF SOUGHT  . . . . . . . . . 19

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . 20

Pursuant to FED.R.APP.P. 26(a)(1), Movant provides:

## INDEX OF  AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGES</u>

**<u>Allis v. United States</u>**,
    155 U.S. 117, 122-123 . . . . . . . . . . . . . . . . . 6

**<u>Boyd v. United States</u>**,
    271 U.S. 104, 108. . . . . . . . . . . . . . . . . . . 6

**<u>Cool v. United States</u>**,
    409 U.S. 100 (1972) . . . . . . . . . . . . . . . . . . 6

**<u>Cupp v. Naughten</u>**,
    414 U.S.141,147(1973): . . . . . . . . . . . . . . . . 6

**<u>Harding v. Davis</u>**,
    878 F2d 1341(11th Cir. 1989) . . . . . . . . . . . . 19

**<u>Harvey v. Tyler</u>**,
    2 Wall. 328, 339; see, e.g. . . . . . . . . . . . . . . 6

**<u>Henderson v. Kibbe</u>**,
    431 US 145, 154 (1977) . . . . . . . . . . . . . . . . 6

**<u>Huynh v. King,</u>**
    95 F3d 1052(11th 1996) . . . . . . . . . . . . . . . . 7

**<u>Jackson v. Denno</u>**,   . . . . . . . . . . . . . . . . . 12
    378 U.S. 368 (1964)

**<u>Jackson v. State,</u>**
    921 S.W.2d 809(Tex.Crim.App.1996) . . . . . . . . . 13

**<u>Kapral v. United States,</u>**
    166 F.3d565, 570,575(3rd Cir.1999) . . . . . . . . . . 2

**<u>Lopez v. United States</u>**,
    373 U.S. 427, 436 . . . . . . . . . . . . . . . . . . 6

**<u>Mason v.  Scully,</u>**
    16 F3d 38th (2nd Cir.  1994) . . . . . . . . . . . 19

**<u>Smith v. Dugger,</u>**
    911 F2d 494 (11th Cir. 1990) . . . . . . . . . . . . 13

**United States v. Torrez-Ortega,**
    No. 97-8094, No. 97-8095, No. 97-8096 . . . . . . . . . 17

**United States v.  Vaquero,**
    997 F2d 78,82 (5th Cir.  1993) . . . . . . . . . . . . . 19

**United States v. Stracener,**
    959 F2d 31 (5th Cir. 1992) . . . . . . . . . . . . . . 5

**United States v. Peters,**
    10 F3d 1517 (10th Cir. 1993) . . . . . . . . . . . . . 12

**United States v.  Galvan,**
    949 F2d 777 (5th Cir.  1991). . . . . . . . . . . . . 20

**United States v.  Mitchell,**
    203 f3d 884,887 (5th Cir.  2000) . . . . . . . . . . . 20

**United States v. McCraw,**
    920 F2d 224 (4th Cir. 1990) . . . . . . . . . . . . . 12

**United States v. Tucker,**
    716 F2d. 576 (9th Cir. 1983)   . . . . . . . . . . . . 12


**STATUTES**

*USC §§ 846 841(a)(1), and 841(b)(1)(C)* . . . . . . . . . . . 8

*USC §§ 846 841(a)(1),and 841(b)(1)(C),*and 18 USC 2 . . . . . . 8

Pursuant to Fed.R.App.P. 26(a)(2)

## STATEMENT OF SUBJECT MATTER JURISDICTION

The basis for the subject matter jurisdiction in the District Court, with citation to applicable statutory provisions and with reference to the relevant statutes to establish such jurisdiction is as follows:

The indictment charged that Movant violated *Title 21 USC §§ 846 841(a)(1), and 841(b)(1)(C)*, conspiracy to possess, with intent to distribute, a quantity exceeding fifty kilograms of marihuana.

In a second count, the indictment further charged that Movant violated *Title 21 USC §§ 846 841(a)(1),and 841(b)(1)(C)*,and 18 USC 2,conspiracy to possess, with intent to distribute, a quantity exceeding fifty kilograms of marihuana.

Relevant facts establishing jurisdiction in the District Court at trial: Government witness Noyola testified that he stopped the Movants in San Benito, Texas. He concluded that the Movants were in possession of eighty-two pounds of marijuana. (Transcript, Vol. 3, pages 21-52)

The basis for the subject matter *jurisdiction* in the District Court *to grant the relief requested, vacation of* judgment, with citation to applicable statutory provisions and with reference to the relevant statutes to establish such jurisdiction is as follows:

The District Court has jurisdiction to vacate the judgment of conviction pursuant to 28 U.S.C.2255. Movant is a federal prisoner, specifically, #92243079, Federal Correctional

Institution, Big Spring FCI, 1900 Simler Avenue, Big Spring Texas 79720-7799. Movant is in federal custody pursuant to a judgment of a federal court, specifically the judgment of the United States District Court for the Southern District of Texas, Brownsville Division, cause No. B-00-CR-3-1. That judgment found Movant guilty of having violated the federal statutes noted above.

Pursuant to FED.R.APP.P. 26(a)(3)

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.   Is the Motion timely?

2.   Was counsel ineffective?

    1.   Was counsel ineffective for failing to request an instruction on the culpable mental state for an accomplice?

    2.   Was counsel ineffective for failing to move to suppress the Movant's statement when there was no reasonable suspicion to stop?

    3.   Was counsel ineffective for failing to move to suppress the marijuana when there was no reasonable suspicion to stop?

    4.   Was counsel ineffective for failure to object to the admission of the grand jury testimony of the agent as an out-of-court statement admitted for its truth which went to a central issue, whether there was an oral confession or not?

x

Pursuant to FED.R.APP.P. 28(a)(4)

## STATEMENT OF THE CASE

The nature of the case was a prosecution for conspiracy and for possession of marijuana with intent to distribute the marijuana.(Original Papers, Indictment, Tab 1; Excerpts, Tab 3)

The course of proceedings was: The Movant was indicted for conspiracy and for possession of marijuana with intent to distribute the marijuana.(Original Papers, Docket Sheet, entry 1; Excerpts, Tab 3) The case was tried to a jury. (Original Papers, Docket Sheet, entry 28; Excerpts, Tab 1, page 7) The jury found the Movant guilty on both of the counts of the indictment. (Excerpts, Tab 4) The Movant filed a Motion for New Trial and an Amended Motion for New Trial.(Original Papers, Docket Sheet, entries 48 and 49; Excerpts, Tab 1, page 9) The trial court ordered a hearing on the Motion for New Trial. (Original Papers, Docket Sheet, entry 53) The trial court denied the Motion for New Trial. (Original Papers, Docket Sheet, entry 54, 56; Excerpts, Tab 1, pages 9-10)

Aside from denying the Motion for New Trial (Original Papers, Docket Sheet, entry 54, 56), the trial court's disposition of the case was to accept the verdict of the jury and to render and enter a judgment finding the Movant guilty of the charges made in the indictment. (Original Papers, Docket Sheet, entry 58; Excerpts, Tab 5) The trial court sentenced the Movant to "27 months, 3 yrs SRT as to ea ct to run concurrent". (Original Papers, Docket Sheet, entry 54; Excerpts, Judgment, Tab 5, page 2 of 6)

The judgment was entered on 8 03 00. (Docket Sheet, entry 58; Excerpts, Tab 1, page 10) The notice of appeal was filed on 7 12 00; it was entered on 7 13 00.(Excerpts, Tab 1, docket sheet, page 10, item 55)

The United States Court of Appeals for the Fifth Circuit affirmed the judgment of conviction and sentence on July 10, 2001, of which the District Court will please take judicial notice. FED.R.EVID.201. The date of finality of the judgment of conviction is July 10, 2001. This Motion is timely filed, inasmuch as it is filed with the clerk of the convicting court within one year of the date of the opinion of the court of appeals affirming the judgment of the district court plus the ninety days within which to seek certiorari from the Supreme Court of the United States.SUP.CT.R.13; **Kapral v. United States**, 166 F.3d565, 570,575(3rd Cir.1999) In Hernandez, the "time for seeking certiorari review" did not expire until ninety days after the opinion of the United States Court of Appeals.  The opinion was dated July 10, 2001.  Ninety days after July 10, 2001 ran on October 8, 2001, a Monday. A year from October 8, 2001 runs on October 8, 2002. This Motion is filed on August 28, 2002. It is timely filed.

Pursuant to FED.R.APP.P. 28(a)(5)

## SUMMARY OF THE ARGUMENT

Was counsel ineffective?

Counsel was ineffective; no conceivable trial strategy could

have justified the following:

1.   failing to request an instruction on the culpable mental
     state for an accomplice;

2.   failing to move to suppress the Movant's statement when
     there was no reasonable suspicion to stop;

3.   failing to move to suppress the marijuana when there was
     no reasonable suspicion to stop;

4.   failure to object to the admission of the grand jury
     testimony of the agent as an out-of-court statement
     admitted for its truth which went to a central issue,
     whether there was an oral confession or not.

Pursuant to FED.R.APP.P. 28(a)(6)

## MOVANT PRESENTS ARGUMENT

Was counsel ineffective?
Counsel was ineffective; no conceivable trial strategy
could have justified the following:

1.    Failing to request an instruction on the culpable mental
       state for an accomplice?

                              3 215
24         THE COURT:  If the record showed that neither side
25   had favored the Court with any written requested instructions

                               216
1   would the record be correct?
2          MR. ESQUIVEL:  That is correct, Judge.
3          MR. RODRIGUEZ:  That is correct, Judge.

Defense counsel is ineffective for failing to object to

instructions on aiding and abetting which are defective. **United**

**States v. Stracener**, 959 F2d 31 (5th Cir. 1992) In **Stracener** this

Court upheld the District Court's determination that failing to

object to inadequate instructions on the aiding and abetting of the

aggravating element constituted ineffectiveness.  Hernandez' case

is worse.  Counsel did not object to instructions which did not

explain an indispensable element of a criminal offense,  mens rea.

The result should be the same as that suggested by trial counsel

himself in the Motion for New Trial, a finding of ineffectiveness

and reversal.

Question: Did the trial lawyer waive any error in the
instructions to the jury by failing to request an
instruction on knowing to act, on secret compartments?

The government, in response to the Amended Motion for New

-4-

Trial, asserted that trial lawyer waived any error in the instructions to the jury by failing to request an instruction on knowing to act, on secret compartments.  (OP 37) The government cited FED.R.CRIM.P. 30.

In some cases, the failure to give a proper instruction warrants reversal of the judgment, even absent an objection or the tender of a proper instruction. **Henderson v. Kibbe**, 431 US 145, 154 (1977)

It is possible that an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.  **Allis v. United States**, 155 U.S. 117, 122-123; **Harvey v. Tyler,** 2 Wall. 328, 339; see, e.g., **Lopez v. United States**, 373 U.S. 427, 436. **Boyd v. United States**, 271 U.S. 104, 108.

An instruction may rise to the level of constitutional error. **Cool v. United States**, 409 U.S. 100 (1972)

The question is noted in **Cupp v. Naughten**, 414 U.S.141,147(1973):

> "[T}he question is... whether the ailing
> instruction by itself so infected the entire
> trial that the resulting conviction violates due
> process."

It did.  It did infect the entire trial so that the resulting conviction violates [U.S.CONST., amend.XIV] due process.  From the beginning of the trial at voir dire, through the examples about the cow and the bank robbery which left participants culpable without

an explanation of the requirement of a culpable mental state, the instructions failed to address the real point of the case: Did the Movant know, or not?  More importantly, the lack of a proper explanation of the requirement of a mental state was a deficiency that deprived the Movant of due process.  Here it deprived him of due process because it allowed him to be convicted of a crime without an adequate explanation of the requirement of a culpable mental state.  Due process requires proof of every element of the offense. **In re Winship**, 397 US 358(1970)  Instructions that did not make this clear allowed a conviction without requiring all the proof due process requires.  That lack of clarity on this essential point deprived this Movant of due process.

2.   Failing to move to suppress the Movant's statement when there was no reasonable suspicion to stop?

Was trial counsel ineffective for failing to move to suppress the Movant's oral statement to the police when the arrest was without a warrant and there was no probable cause?

It is ineffective for trial counsel to fail to file a potentially meritorious motion to suppress evidence seized in a warrantless search. **Huynh v. King**, 95 F3d 1052(11th 1996)

Here, there was indeed a potentially meritorious motion to suppress, but no pretrial motions were filed.  The Movant's statement was all the law and the prophets in this case.  Without his statement, the prosecution had no evidence that he knew of the presence or of the character of the substance.  There was no

warrant for this arrest.  The very stop was based upon race and out-of stateness.  This falls below an objective standard.  Even a lawyer who has not yet learned the distinction between reasonable suspicion to stop and probable cause to arrest would know that the police cannot use race as a reason to stop.

In opening statement, the prosecutor told the jury that the Movant had admitted loading the trailer and knew that there was marijuana in the trailer:

3

```
   Fernando Hernandez gets the Miranda
23 warning, and he admits after being Mirandized -- he admits
24 that the marijuana was his.  He admits that he had loaded the
25 marijuana in the trailer and that he thought it was only 70
```

There was no motion to suppress the statement.  (Original Papers, Docket Sheet, 3 2 00, Tab 16)

The prosecutor's opening statement showed that there was no probable cause to arrest:

3 11

```
20 When he was traveling, he noticed that there was a Mercedes
21 and a tractor-trailer basically one right behind the other.
22 So he passed them and he noticed that, based on his
23 experience, it didn't look right.  And he was going home.  It
24 was a white Mercedes, a 1992 Mercedes, and he decided to
25 follow them.
```

The prosecutor indicated that the stop and the statement were very closely related in time:

3 14

```
   "On Friday they take
21 off, get stopped, and Fernando Hernandez is the driver, Isabel
```

-7-

22  Soza is the passenger.  Fernando Hernandez gets the Miranda
23  warning, and he admits after being Mirandized -- he admits
24  that the marijuana was his.  He admits that he had loaded the
25  marijuana in the trailer...."

[The testimony showed that there was no reasonable suspicion to

stop.}

        Paul Noyola, the off-duty agent, testified:

8  A    Yes, later that afternoon, 2:30 or so, two other gentlemen
9       arrived in the vehicle and started working on the truck.
10 Q    And were you able to identify who that was?
11 A    No.
12 Q    And after that did you see any other activity?
13 A    The two individuals came back and I believe they put some
14      bags in the sleeper birth, which is the compartment behind
        the
15      truck-tractor where they've got those sleeping bags, and
        what
16      not.
17 Q    What individuals?  Could you tell who they were?
18 A    We couldn't tell, but I assumed they were Soza and
19      Hernandez because of their physical description.
20 Q    Did you see the Mercedes there at any time?
21 A    No, we didn't.
22 Q    Now, did the tractor-trailer eventually take off from
23      there?
24 A    Yes, it did.
25 Q    And when he took off where was the Mercedes?  Was it left

                                45
1       behind?
2  A    The Mercedes was never seen again.
3  Q    And what time did this tractor-trailer take off?
4  A    It took off approximately 6:40 PM on Friday the 10th.
5       Yeah, the 10th.
6  Q    And did you follow it?
7  A    I had two other investigators that had followed it and
8       then I later picked up on surveillance.
9  Q    And where did you pick up on surveillance?
10 A    There on Sam Houston and expressway.
11 Q    Were you involved in the stop of this tractor-trailer?
12 A    Yes.
13 Q    What did you do?
14 A    Well, we just directed the trooper to where the
15      truck-tractor was at and the trooper conducted the traffic

                               -8-

```
16        stop.
```

Noyola interrogated Hernandez, the Movant, after telling him

of his rights.

```
22  Q    And after that did you meet one of the Movants,
23       Fernando Hernandez?
24  A    Yes.
25  Q    Okay.  And did you talk to Mr. Hernandez?
```

                                3   46

```
1   A    Yes, I did.
2   Q    Okay.  Prior --
3             THE COURT:  Can we assume everybody was arrested?
4             THE WITNESS:  Yes, sir.
5             THE COURT:  How many people were arrested?
6             THE WITNESS:  Two individuals.
7             THE COURT:  Who were they?
8             THE WITNESS:  Isabel Soza and Mr. Hernandez.
9         BY MR. ESQUIVEL:
10  Q    Were you involved in the arrest of these individuals?
11  A    Yes, I was.
12  Q    Did you arrest them or did somebody else arrest them?
13  A    The trooper was the one that placed them under arrest.
14  Q    And then did he turn them over to you?
15  A    They kept custody of the Movants until we got to the
16       Tomates Bridge.
17  Q    And at Tomates Bridge did you talk to one of the
18       Movants?
19  A    Yes, I did.
20  Q    And who was that?
21  A    Mr. Hernandez.
22  Q    Fernando Hernandez?
23  A    Yes.
24  Q    And prior to talking to him did you advise him of his
25       rights?
```

                                3     49

```
1   A    No, he didn't.   He transported him.
2   Q    When did you come in contact with Fernando Hernandez
3        again?
4   A    Once we got to Los Tomates Bridge here in Brownsville.
5   Q    What were you doing at Los Tomates Bridge in Brownsville?
6   A    We were preparing to unload the produce from the trailer.
7   Q    Did you all unload the produce?
```

```
 8   A    Yes, we did.
```

                                    15
```
 1        pounds, not 82 as we allege in the indictment.
```

     Noyola warned Hernandez.

```
10   A    Well, besides the boxes of limes that we had taken out we
11        also found 82 pounds of marijuana.
12   Q    Now, did you -- at that point, after you all found that,
13        did you talk to Fernando Hernandez?
14   A    Yes, I did.
15   Q    Before you talked to him, did you give him what we call
16        his Miranda warnings?
17   A    Yes, I did.
18   Q    What are Miranda warnings, sir?
19   A    That's the Miranda warnings that is read to the Movant
20        or individual before any questioning is done.
21   Q    And did you do that with Mr. Hernandez?
22   A    Yes, I did.
23   Q    And what did you use to give him his warnings?
24   A    The Miranda warning card.
25   Q    Do you have that with you?
```

                                    50
```
 1   A    Yes, I do.
 2   Q    Can you tell the jury the exact warnings you gave Mr.
 3        Hernandez by using your card?
 4   A    I can read them off.
 5   Q    Can you do that, please?
 6   A    Says "warning" --
 7        THE COURT:  Now, tell the jury exactly how you did it
 8        to Mr. Hernandez that day.
 9        THE WITNESS:  Says, "Before you are asked any
10        questions, it is my duty to advise you of your rights and
          to
11        warn you of the consequences of waiving your rights."
```

     Statements taken moments after Movant was illegally pulled over

should have been suppressed. **United States v. Peters**, 10 F3d 1517

(10th Cir. 1993) Even if the statement was voluntary by Fifth

Amendment standards, the proximity between the illegal arrest and

search required suppression under the Fourth Amendment.  **United**

                                   -10-

**States v. McCraw,** 920 F2d 224 (4th Cir. 1990)

An effective lawyer would have moved to suppress; the agent did not put anything about the confession in his report.  What was lost was the opportunity to convince the trial judge that the statement should have been suppressed because of the close proximity of the illegal stop and illegal seizure and illegal search.  Had the trial court heard a motion to suppress, the jury might not have heard the evidence of the confession.  **Jackson v. Denno,** 378 U.S. 368 (1964) No reasonable trial strategy could justify not filing and getting a hearing on a Motion to Suppress where there was no warrant, no reasonable suspicion to stop, and the arrest and seizure promptly followed the illegal arrest.

Where the trial lawyer does "little pretrial", Movant is denied effective assistance of counsel. **United States v. Tucker**, 716 F2d. 576 (9th Cir. 1983) Here, in Hernandez' case, the trial lawyer did no pretrial at all. (Original Papers, Docket Sheet, 3/2/00, Tab 16; Record Excerpts, Tab 1) Harm is presented because the Movant lost the opportunity to have the judge suppress the statement.  Harm is presented because the jury heard the evidence of the confession. Without the confession, the remaining proof would have failed on the mental element of knowing or intentional possession.

Counsel is ineffective for failing to move to suppress the Movant's confession when there is a colorable or viable basis to do so. **Smith v. Dugger**, 911 F2d 494 (11th Cir. 1990) Here the Movant's

statement was immediately after the invalid stop. He should have moved to suppress. He did not. The District Court should grant a new trial.

Counsel is ineffective for failing to move to suppress drugs when there is no warrant and no probable cause, even if there is a valid Terry stop. **Jackson v. State**, 921 S.W.2d 809(Tex.Crim.App.1996) Here there was not even a valid Terry stop. There is no evidence of any warrant. There is no evidence of any probable cause; the stop, detention, search, and seizure were based on race and out-of-stateness. The Court should review the opinion of the Texas Court of Criminal Appeals for rationality and analysis of federal rights, should find that the facts are worse in **Hernandez** than in **Jackson** since there was not even a valid Terry stop in **Hernandez**, and should remand for a new trial.

The cross-examination of the officer as well as the trial court's intervention indicate that had the matter been brought to the district court's attention by a motion to suppress, there was a very good probability that the motion would have been granted: The illegality was admitted on cross-examination:

3

24  Q     Now, there was nothing illegal going on when these two
25  vehicles were following each other, right?

59

1  A   No.
2  Q     There is nothing against the law for a Mercedes to follow
3        a utility trailer?
4  A     No, there is not.

-12-

```
5  Q       And when they pulled over to talk in front of HEB and
6          Weiner's, there is nothing illegal going on there, was
           there?
7  A       No.
8  Q       That is not against the law?
9  A       No, it is not.
10 Q       But you immediately suspected something?
11 A       Yes, I did.
```

The trial court intervened:

```
                              3  61
5   THE COURT:  So on the face of things you wouldn't
6   have any reason to believe that he was doing anything
7   illegal?
8   THE WITNESS:  No.
```

Just so.  The trial court asked the question.  It got the answer that would have demanded that the evidence be suppressed. The only things wanting in this trial were a timely motion to suppress, a motion for hearing, a hearing , and findings of fact and conclusions of law.

It flies in the face of reason to argue that the district court could have disbelieved the officer's answer.  First of all, the answer was direct, unequivocal, and uncontradicted.  The officer did not have any reason to believe that the Movants had done anything illegal. Second, his negative answer is not any evidence of illegality. Had the district court heard this evidence on motion to suppress, he would doubtless have suppressed the evidence: the statement and the substance.  Had he not, this Court would have been asked to review that decision.

The Court of Appeals should find that the action of trial

counsel fell below an objectively reasonable standard. Effective counsel would have filed and presented a motion to suppress. The Court of Appeals should remand for a new trial so that effective counsel may do just that.

Significantly, the officer , Noyola, to whom the statement was assertedly made did not include any mention of any statement in his report.  Neither did the accompanying officer, Washer.

3  135

```
23  Q    So, again, in your report there is no mention of anybody
24       confessing or anything like that?
25  A    No, sir, there is not.
```

Washer admitted that none of the officers mentioned the alleged confession.

3  136

```
12  Q   That's what I mean.   All the officers are very
13      meticulous,  yet  no  one  mentioned  about  the  alleged
        confession,
14  is that correct?
15  A   Yes, sir.
16  Q   And yet that's the whole key issue of the case,
17      possession, is that correct?
18  A   That is correct.
```

Another  officer,  Reynaldo  Martinez,  failed  to  note  any confession in any report.

3  153
```
5  A   It is important.  And the statements were made, sir.  Just
6      not written down.   Just overlooked.
```

Reynaldo Martinez also admitted that the out-of-stateness was a reason for the stop:

3  157

    The idea --  the idea of a Mercedes-Benz being
13 down here with New Jersey plates meeting with truck-tractor
14 trailers, it is common knowledge among narcotics people that
15 the New Jersey-New York area there is a lot of demand for
16 narcotics.  And we were acting on that suspicious activity.


    The Movant's statement heard by Friday was also admitted:
                              3  178

1     THE WITNESS:  I testified on January 4th, I believe,
2 and the indictment was returned that same day, I
believe.
3     THE COURT:  That's my question.  All right.  And it
4 is your testimony that when you spoke to the Grand       Jury
that
5 you were under oath?  Were you under oath?
6     THE WITNESS:  Yes, sir.
7     THE COURT:  All right.   That you told them you had
8 information regarding statements?
9     THE WITNESS:  Yes, I did.
10     THE COURT:  And did you explain who the sources
11 were?
12     THE WITNESS:  I am not sure if I stated that Paul
13 Noyola had told me  --  I am not sure if I told them     who
the
14 source was.
15     THE COURT:  Did you make reference to the fact that
16 you had been given information to that effect?
17     THE WITNESS:  Yes, I did.
18     THE COURT:  As early as January 4th the year 2,000?
19     THE WITNESS:  Yes, sir.
20     MR. MARTINEZ:  Your Honor, we have the testimony from
21 the Grand Jury if you would like to hear it regarding       the
22 Movant's statement.
23     THE COURT:  Sir, that is not for me.   Do you have
24 any other questions?
25     MR. MARTINEZ:  Yes.

    The trial court admonished the officers for not putting

anything about the Movant's statement in anyone's report:

                              3  184

11 THE COURT:  Well, isn't that shoddy law enforcement
12 when people don't write down in their reports that somebody
13 made a statement?

```
14  THE WITNESS:  Yes, sir.
15  THE COURT:  It is, isn't it?
16  THE WITNESS:  Yes, sir.
17  THE COURT:  What about when three people say that
18  statements were made to them by a person and they didn't put
19  it in their reports?  Is that three times shoddy?
20  THE WITNESS:  Yes, sir.  I think everybody was under
21 the impression that the other person was going to write the
22  report.
23  THE COURT:  Somebody else was going to do it.
```

        4.    Failure to object to the admission of the grand jury testimony of the agent as an out-of-court statement admitted for its truth which went to a central issue, whether there was an oral confession or not?

Was trial counsel ineffective for failure to move to suppress the testimony of the policeman before the grand jury?

    1.    **United States v. Torrez-Ortega**, No. 97-8094, No. 97-8095, No. 97-8096, United States Court of Appeals for the Tenth Circuit, 184 F.3d 1128; 1999 U.S. App. LEXIS 14848; 51 Fed. R. Evid. Serv. (Callaghan) 1321; 1999 Colo. J. C.A.R. 4232,    July 1, 1999, Filed
OVERVIEW:
A co-conspirator's grand jury testimony, upon which he was cross-examined after invoking his right to remain silent, was not harmless error as to other conspirators, and the introduction of this evidence violated the Confrontation Clause.

Here the prosecutor introduced the agent's testimony before the grand jury.    The agent told the grand jury the Movant had confessed. The proof of the agent's testimony to the grand jury was out of court. The proof of the agent's testimony to the grand jury was offered for the truth of it, that Movant had indeed confessed. The proof of the agent's testimony to the grand jury was hearsay, since it was an out of court statement admitted for its truth.

FED.R.EVID. 802. It is no answer that some exception might apply; defense counsel did not even object in order to make the prosecutor attempt to come forward with any proposed exception. FED.R.EVID. 802. makes hearsay inadmissible. The proponent has to come forward with an exception.   An effective lawyer would have objected. Movant's did not.  He was harmed because admitting the testimony in front of the grand jury bolstered the idea that the Movant had confessed, even though none of the five agents wrote anything down about it. Without the Movant's statement, the proof would have failed on mens rea.  Since this is not a water pollution or other criminal case in which the congress has expressly done away with the requirement of mens rea, the Movant would have been entitled to a judgment of acquittal.  Counsel is ineffective for failing to object to critical evidence. **Mason v. Scully,** 16 F3d 38th (2nd Cir. 1994).  In **Mason,** Counsel was ineffective for failing to object to the hearsay of a co-Movant.  In  Hernandez, it was worse.  The hearsay was a confession of the Movant, bolstered, as noted by the trial judge.

The Court of Appeals should find defense counsel ineffective and remand for a new trial.

The defense counsel did not renew the Motion for Judgment of Acquittal at the close of all the evidence.

A higher standard is imposed for not not renewing the Motion for Judgment of Acquittal at the close of all the evidence. Counsel

closed  without renewing the Motion for Judgment of Acquittal at the close of all the evidence (Transcript, 3 214/5-12) **United States v. Vaquero**, 997 F2d 78,82 (5th Cir. 1993).

There could be no excuse; there could be no trial strategy. Harm results; Movant is held to a much higher standard. **Vaquero, supra.**

Counsel who fails to object when the trial court directs a verdict  against him is ineffective. **Harding v. Davis**, 878 F2d 1341(11th Cir. 1989) This is virtually the same. Now appellate counsel has a higher standard of review to contend with, all because trial counsel did not renew his motion at the close of all the evidence. **United States v. Mitchell**, 203 f3d 884,887 (5th Cir. 2000)

The Court should find counsel ineffective and remand for a new trial. Additionally, it should review the evidence for a "manifest miscarriage of justice", since there was no motion for judgment of acquittal at the close of the evidence. **United States v. Galvan**, 949 F2d 777 (5th Cir. 1991).

Pursuant to FED.R.APP.P.28(a)(7)

## CONCLUSION AND REQUEST FOR RELIEF

The District court should find counsel ineffective, and should reverse the judgment of conviction and order a new trial.

Law Office of Larry Warner

By: _____

Larry Warner
Texas Bar No. #20871500
USDC, SDTX # 1230
777 E. Harrison St 2nd Floor
Brownsville, TX 78521
Tel. (956)542-4784
Fax (956) 544-5234
Attorney for **Fernando Hernandez**, Movant

-19-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
BROWNSVILLE DIVISION

B-02-167-CV
Fernando Hernandez, Movant

vs.

United States of America

****************
Movant's Brief in Support of Motion Attacking Sentence by
Prisoner in Federal Custody; Motion pursuant to 28 U.S.C.2255
****************

CERTIFICATE OF SERVICE

I certify that I mailed a true and correct copy of **Movant's Brief in Support of Motion Attacking Sentence by Prisoner in Federal Custody; Motion pursuant to 28 U.S.C.2255** on the above referenced case to which this certificate is attached by U.S. Postal service to: James Turner, Assistant U.S. Attorney, P.O. Box 31129, Houston, Texas 77028 this September 4, 2002.

Law Office of Larry Warner

By:

_____
Larry Warner
Texas Bar No. #20871500
FEDERAL ID # 1230
777 E. Harrison St 2nd Floor
Brownsville, TX 78521
Tel. (956)542-4784
Fax (956) 544-5234

-20-