IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 5 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | CA. NO. B-02-167 |
| | § | (CR. NO. B-00-003) |
| FERNANDO HERNANDEZ, | § | |
| Defendant-Movant. | § | |

**UNITED STATES' ANSWER TO MOTION TO VACATE
UNDER 28 U.S.C. §2255 AND BRIEF; AND RESPONSE TO
ORDER TO SHOW CAUSE**

The United States of America, by the United States Attorney for the Southern

District of Texas, files this Answer to Motion to Vacate under 28 U.S.C. § 2255 and

Brief.

<u>JURISDICTION</u>

This court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. § 2255.

<u>DENIAL</u>

The United States denies each and every allegation of fact made by Petitioner,

Fernando Hernandez ("Hernandez"), except those supported by the record and those

specifically admitted herein, and demands strict proof thereof.

## ALLEGATIONS

Hernandez makes the following allegations in support of his motion to vacate

sentence:

1.    He was denied his right to effective assistance of counsel at trial due to
his attorney's failure to request an instruction on the culpable mental
state for an accomplice.

2.    He was denied his right to effective assistance of counsel due his
attorney's failure to move to suppress his statements and the marihuana
on the ground that there was no reasonable suspicion to justify the stop.

3.    He was denied his right to effective assistance of counsel due to his
attorney's failure to object to the agent's out-of-court testimony before
the grand jury regarding Hernandez's oral confession.

## STATEMENT OF THE CASE

Hernandez was charged by indictment, along with Isabel Soza, on January 4,

2000, with conspiracy, in violation of 21 U.S.C. Section 846 (count one); and aiding

and abetting possession with intent to distribute of approximately 37.27 kilograms of

marihuana in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(D) and 18 U.S.C.

Section 2 (count two) (Doc.[1]1). On March 16, 2000, the district court granted

Hernandez's and Soza's motion to sever their trials and Hernandez proceeded with

counsel, Mr. Richard Rodriguez, to a jury trial (Doc. 23). The jury returned a verdict

---

[1] "Doc." refers to the document filed in the Criminal Case, B-00-003, and is followed by
the document number.

of guilty on both counts (Doc. 32). On June 1, 2000, Hernandez, through Mr.

Rodriguez, filed a motion for new trial and amended motion for new trial, arguing the

court should have submitted a more specific jury instruction on knowledge, and that

trial counsel, Mr. Rodriguez, provided him ineffective assistance for failing to request

the charge (Docs. 48, 49, 52). The government responded Hernandez' new trial

motion was untimely (Doc. 50). On July 11, 2000, this court denied Hernandez'

motion for new trial and sentenced him to two concurrent terms of 27 months in the

custody of the United States Bureau of Prisons, to be followed by concurrent three-

year terms of supervised release. This court also imposed a $200 special assessment

(Docs. 54, 58).

Judgment was entered on August 2, 2000; and, Hernandez appealed his

conviction (Docs. 55, 58). The court of appeals affirmed in an unpublished opinion

(Doc. 69). The mandate issued on August 1, 2001 (Doc. 68). Hernandez timely filed

a motion to vacate under 28 U.S.C. § 2255 on August 30, 2002 (Doc. 71). *See United

States v. Thomas*, 203 F.3d 350, 351 (5th Cir. 2000) (Title 28 U.S.C. § 2255 provides

that a one year period of limitations that typically begins to run on the date on which

the judgment of conviction becomes final); *United States v. Gamble*, 208 F.3d 536,

537 (5th Cir. 2000) (if defendant does not file a petition for writ of certiorari,

conviction becomes final when the ninety-day period for seeking certiorari review expires).

## RESPONSE TO ORDER TO SHOW CAUSE

On May 23, 2003, this court entered an order to show cause why the petition should not be granted (Doc. 6, Cv.No. B-02-167). This was apparently on based on the issuance of a summons and return of service executed as to the United States on November 19, 2002 (Doc. 5, Cv.No. B-02-167). According to Rule 12 of the Rules Governing § 2255,

> If no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules.

Rule 12, Rules Governing Section 2255. Rule 4 of the Rules Governing 2255 describes the initial procedure to be followed upon the filing of a petition by the defendant, including the requirement that the government be ordered to file an answer if the court determines that summary dismissal is not warranted:

> (b) **Initial consideration by judge.** The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court , the judge shall make an order for its summary dismissal and cause the movant to be notified.

4

> Otherwise, the judge shall order the United States Attorney to file an
> answer or other pleading within the period of time fixed by the court or
> to take such other action as the judge deems appropriate.

Rule 4, Rules Governing § 2255. This procedure is inconsistent with dismissal based solely on the return of service executed. There was no order by this court directing the United States to file an answer until May 23, 2003; and, at that time this court gave the United States until June 6, 2003 to comply (Doc. 5, Cv.No. B-02-167). Since the government's answer, which has been consolidated with the response to the order to show cause, is timely filed, there are no valid procedural grounds for summarily granting the petition. Default is not contemplated in habeas corpus cases. *See Sparrow v. United States*, 174 F.R.D. 491, 492 (D.Ct. Utah 1997) (citing *Bermudez v. Reid*, 733 F.2d 18 (2nd Cir. 1984) and *Aziz v. Leferve*, 830 F.2d 184,187 (11th Cir. 1987)).

## ANSWER AND BRIEF

### Statement of Facts

On December 8, 1999, at around 3:00 p.m., Texas Department of Public Safety (DPS) Sergeant Paul Noyola, was en route home from work, traveling north on U.S. 77 from Brownsville to Harlingen, when he noticed a white Mercedes with New Jersey license plates traveling behind a large tractor-trailer. On the driver's door of the tractor, were the words "Rahway, New Jersey" and "Fernie Ray EE". As he

passed the vehicles, he saw two young Hispanic men in the Mercedes (Doc. 60, pp. 21-24, 76). Sergeant Noyola decided to follow the Mercedes and tractor-trailer. They exited on M Street in Harlingen and traveled north on the frontage road to Lincoln Street. The tractor/trailer pulled over to the shoulder of the frontage road next to the Weiner's shopping center, and the Mercedes parked in the empty strip center parking lot, parallel to the truck. The driver (Hernandez) exited the truck and walked over to the Mercedes and entered the right rear passenger seat. The Mercedes then drove to Weiner's and parked. The driver of the Mercedes (Isabel Soza) went inside Weiner's for about two to three minutes. Soza then drove the Mercedes back to the tractor-trailer and Hernandez reentered the tractor (Doc. 60, pp. 24-30).

Meanwhile, Sergeant Noyola notified fellow DPS officers of his observations, and a surveillance team was created. From there, Sergeant Noyola and the surveillance team, followed the vehicles. The tractor/trailer, with the Mercedes following closely behind, traveled westbound on Highway 83 toward McAllen, to Pharr, Texas, where they took the Cage exit. Hernandez immediately pulled the tractor-trailer to the shoulder of the road and parked, and Soza parked the Mercedes directly behind it. They remained there for several minutes. Hernandez and Soza then switched vehicles. Sergeant Noyola followed Soza in the tractor-trailer north to PaulMex International Produce Shed on Russell Road in Edinburg, while other

officers followed Hernandez who drove the Mercedes toward the Hidalgo area. Soza

backed the tractor-trailer into the third door entrance to PaulMex's shed. It remained

there for about 1½ hours (Doc. 60, pp. 31-36, 138-39).

At around 5:30 or 6:00 p.m., Sergeant Noyola and the surveillance team

followed Soza in the tractor/trailer to Silver Spur Truck Stop in Pharr, Texas

Hernandez arrived at the truck stop in the Mercedes about ten to fifteen minutes later.

Hernandez and Soza waited at the truck stop for about 35 to 40 minutes while a tire

was replaced on the trailer. The tractor-trailer and Mercedes drove back to the Cage

exit and parked. Hernandez and Soza again swapped vehicles. Hernandez drove the

tractor/trailer, and Soza followed in the Mercedes, toward Harlingen on Highway 83

to Garza Mechanic Shop. The tractor-trailer remained at the shop, and the Mercedes

departed. Since it was dark and the surveillance team was located some distance

away, they could not identify individuals at the shop. Officers maintained surveillance

of the shop for two days (Doc. 60, pp. 35-43, 140-44, 161-67).

On December 10, at around 12:10 p.m., officers saw two men open the back

door to the trailer and retrieve two boxes (they later learned they contained limes).

Around 2:30 p.m. two men arrived and began working on the truck. They also placed

two duffel bags in the sleeper birth (compartment behind the cabin). At 4:00 p.m.,

three individuals approached the truck and opened the hood of the tractor. They

appeared to be working on the engine and checking the lights. One or two of the individuals went to the back of the trailer and opened the door. Hernandez and Soza departed from the shop in the tractor-trailer at 6:40 p.m. (Doc. 60, pp. 43-45, 167-69).

Drug Enforcement Administration(DEA)Agent David Friday subsequently observed the tractor-trailer go to a truck stop where it was weighed. The vehicle then parked in the back of the truck stop for about an hour before it departed. Sergeant Noyola alerted DPS State Trooper Ryan Maza that the tractor-trailer was headed in his direction, north on U.S. 77, south of Orphanage Road. Trooper Maza followed the vehicle. When he observed the tractor-trailer driving on the shoulder of the road, Trooper Maza stopped the vehicle for violating the traffic laws. He informed the driver, Hernandez, the purpose of the stop, and gave him a citation for the traffic violation. Hernandez indicated he understood why Trooper Maza stopped him. Trooper Maza asked Hernandez about his origin and destination. Hernandez appeared nervous. He kept wiping the sweat from his hands onto his pants (Doc. 60, pp. 45, 47-48, 56, 75, 82-86, 144-45, 169-70).

Trooper Maza asked Hernandez if he minded officers searching the tractor-trailer. Hernandez replied "No, I don't mind." Trooper Maza next asked "do you mind signing a consent to search form?" Hernandez again replied that he did not mind (Doc. 60, pp. 86, 98). Trooper Maza read the consent form to Hernandez and he

8

indicated he understood the contents. He signed the form without hesitation. The

consent form was dated 12/10/99, and the time was 7:50 p.m. Thereafter, Trooper

Maza, with the assistance of other officers, searched the tractor-trailer. The trailer

contained a "palletized shipment of limes". Several pallets were stacked on top of

each other. Border Patrol Agent Dexter Washer arrived with "Boz", a drug-sniffing

dog, to assist in the search. Boz (a Belgian Malinois), was trained to detect

marihuana. When Agent Washer and Boz approached the trailer, Boz became very

excited and ran straight to the back of the trailer. He attempted to jump four feet into

the air to enter the trailer door. Agent Washer lifted Boz into the trailer and the dog

went directly to the middle of the trailer where he unsuccessfully tried to get

underneath the pallets. Boz stayed there and waited, thereby giving a positive

indication that drugs were present. Agent Washer took his flashlight and proceeded

toward the middle of the trailer. As he peered through the cracks in the pallets, he

noticed a black plastic trash bag. He quickly shifted several boxes of limes to retrieve

the trash bag. He and Trooper Maza looked at the contents of the bag and surmised

it was marihuana (Doc. 60, pp. 91, 99-101, 107-08, 115-25).

   Trooper Maza arrested both Hernandez and the passenger, Soza, and advised

them of their *Miranda* rights.[2] They both indicated they understood their rights (Doc.

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

60, pp. 86, 90-93, 110). Trooper Maza asked Hernandez one question: "How much more do you have in there?" and Hernandez answered: "70 or 80 pounds" (Doc. 60, pp. 93-94). He did not asked Soza any questions. Trooper Maza notified Sergeant Noyola about the arrests and seizure (Doc. 60, p. 94).

Officers transported Hernandez and Soza in separate patrol cars, and the tractor-trailer to Los Tomates Bridge in Brownsville to off-load the contents in the trailer and recover all the marijuana. While in transport, Hernandez told Lieutenant Reynaldo Gonzalez he had about 70 pounds or so of marijuana in the middle section of the trailer. If the officers would supply a forklift, he would be happy to off-load the trailer himself. With Hernandez' help, Lieutenant Gonzalez was able to contact the broker for the limes, and the broker made arrangements for another vehicle to transport the limes. The broker hired a private company to off-load the limes from the trailer with a forklift and load them into the replacement vehicle. The load was headed for either New Jersey or New York (Doc. 60, pp. 46, 48-49, 94, 127-28, 145-47, 170-71).

Sergeant Noyola read Hernandez the *Miranda* rights again at Los Tomates Bridge and Hernandez confirmed he understood them. Hernandez waived his *Miranda* rights and elected to talk with Sergeant Noyola. When Sergeant Noyola asked what quantity of marihuana was in the trailer, Hernandez answered 70 pounds.

10

Sergeant Noyola asked "that's all?" and Hernandez replied "yes, that's it". Sergeant Noyola asked when the trailer was loaded, and Hernandez stated Wednesday night (December 8) (Doc. 60, pp. 46, 49-52).

Agent Washer, Sergeant Noyola, DEA Agent Friday, DPS Lieutenant Reynaldo Gonzalez, and other officers, recovered from inside the trailer approximately 82 pounds of marihuana in black garbage bags. The bags had been packed within the boxes of limes and in dead spots on the pallets (Doc. 60, pp. 49, 127-28, 132-33, 147-48, 171).

On Monday morning, DEA Agents Friday and Esteban Mendoza transported both Hernandez and Soza from the Cameron County Jail to the U.S. Marshall's Office for their initial appearance. Officer Mendoza read them their *Miranda* rights in Spanish. When he advised Soza he was being charged with possession with intent to distribute 82 pounds, Hernandez interjected with a giggle: "I thought it was 70. Who put the extra 12 pounds?" Soza stated he knew nothing about the case (Doc. 60, pp. 179-80, 198).

Elizabeth Alaniz testified that on December 8, 1999, PaulMex International received an order from KB&R Trading Corporation for a load of limes. PaulMex loaded 1050 boxes of limes into a trailer. The load was destined for New Jersey. The tractor-trailer, with load, was supposed to weigh 80,000 pounds. Each box of limes

weighed about 40 pounds. Had 80 pounds been added to the load it would have affected the weight. If someone removed two boxes of limes, that would off-set the extra 80 pounds. Ms. Alaniz testified it would be unusual for a trucker to pick up a load of produce and then let it sit in a parking lot for two days before transporting it, since produce has a short life. A delay of one day in shipping can affect the value of the produce (Doc. 60, pp. 203-08).

Standard for Determining Effective Assistance of Counsel

Hernandez claims he was denied his right to effective assistance of counsel at trial. To establish a Sixth Amendment violation, a defendant must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Tucker v. Johnson*, 242 F.3d 617, 621 (5th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511 (2000)). A failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)).

<u>Failure to Object to Jury Instructions</u>

Hernandez contends that he was denied his right to effective assistance of counsel because counsel failed to request an instruction on the necessary culpable mental for an accomplice. He contends that this court's jury instructions did not explain the element of mens rea. According to Hernandez:

> From the beginning of the trial at voir dire, through the examples about the cow and the bank robbery which left participants culpable without an explanation of the requirement of a culpable mental state, the instructions failed to address the real point of the case: did the Movant know, or not? More importantly, the lack of a proper explanation of the requirement of a mental state was a deficiency that deprived the Movant of due process. Here it deprived him of due process because it allowed him to be convicted of a crime without an adequate explanation of the requirement of a culpable mental state.

Movant's Brief in Support of Motion under 28 U.S.C. § 2255 at pp. 5-6.

"A conviction for possession of marijuana with intent to distribute requires proof that the defendant (1) knowingly (2) possessed marijuana (3) with intent to distribute it." *United States v. Hernandez-Bautista*, 293 F.3d 845, 853 (5th Cir. 2002). "To aid and abet, a defendant must associate with the criminal venture, participate in it, and seek by his actions to make the venture succeed." *Id.* "To aid and abet means to assist the perpetrator of a crime by some affirmative act intended to aid the venture, while sharing the requisite criminal intent." *United States v. Peters*, 283 F.3d 300,

308 (5th Cir. 2002). "[A] defendant must share in the intent to commit the offense as

well as play an active role in its commission." *Hernandez-Bautista*, 293 F.3d at 853.

This court instructed the jury as to the elements of possession of marihuana

with intent to distribute:

> In order for you to find the defendant guilty of Count Number 2 – and
> remember this is a predicate offense for Count Number 1. That in order
> for you to find him guilty on Count Number 2 and/or Count Number 1
> – and you defer on Count Number 1 until I explain to you the law on
> matters of conspiracy – you must find that the defendant – that the
> Government has proven all of the three following elements. All of them.
> No some, not most, but all.
>
> Number 1, that the defendant, Fernando Hernandez, knowingly
> possessed, as I have defined possession to you, the marijuana in
> question.
>
> That in fact the substance was in fact more or less 82 pounds of
> marijuana.
>
> In addition to that, that he possessed the substance, as I have defined
> possession to you, with the intent to distribute it.

(Doc. 60, pp. 229-30). Earlier, the court had instructed the jury on the law of aiding

and abetting:

> Under the laws of the United States you don't have to be the person who
> committed the crime to be as guilty as . . . the one who actually
> committed it. I like to introduce the law of aiding and abetting through
> a Spanish saying we have: "He who holds the cow's leg is just as guilty
> as the one who shot the cow in he head." Why? Because if somebody
> hadn't held the cow in place, it wouldn't have been there for somebody
> to shoot it in the head.

14

(4 R. 224). The court then continued:

> In law school the classic example that is given to us, in my days, . . . was the person who drove the getaway car to the bank that was robbed. He didn't go in and rob the bank, but the fact that he was helping them by being there with the getaway car is what? Aiding and abetting. You can be found just as guilty as the one who actually robbed the bank.

> You see, this is so because if another person is acting under the direction of the defendant or the defendant joins another person and performs acts with the intent to commit a crime, then the law holds that person responsible for the acts and conduct of such other persons just as though he had committed the acts or engaged in such conduct.

> But now we are going to come to something real important that is really in every criminal case but certainly in this one. Before a person may be held criminally responsible for the acts of others it is . . . necessary that the accused deliberately – and I listen to these two words, all right, and listen to these two words – knowingly and willfully, knowingly and willfully, associate himself in some way or manner with the crime and participate in it with the intent to bring it about.

> And mere presence, just because you are where a crime is being committed, does not make you guilty. Or mere knowledge, just because you know a crime is being committed, does not make you guilty. That is not sufficient to establish that a person either directed, aided or abetted a crime unless you find beyond a reasonable doubt that the defendant was a knowing and willful, knowing and willful, participant and not merely a spectator.

> With respect to the law of aiding and abetting you cannot find the person guilty . . . unless you find beyond a reasonable doubt that every element of these offenses, as I am going to define to you, were committed by some person or persons and that the defendant knowingly and willfully participated in the commission with the intent to violate the law.

(Doc. 60, pp. 224-26) (emphasis added). Later, this court gave the jury further explanation of the terms knowingly and willfully:

> Now, we come to two terms that I earlier emphasized and they are very important because, you see, it can appear on the face of things in our country that a person committed the crime but if that person did not possess the required state of mind we can't find that person guilty.
>
> The first one I want to call to your attention is knowingly, and knowingly means that what you did voluntarily and purposely and intentionally, that what you did you did because you wanted to do it and not by accident or mistake. That what you did you did because you wanted to do it and not by accident or mistake.
>
> And willfully means that you did what you did voluntarily and purposely and with the specific intent, with the specific intent to do something the law forbids.

(Doc. 60, pp. 228-29).

Hernandez makes no suggestion as to how this court could have improved on its instructions. Moreover, since the court's instructions were consistent with the caselaw and with this circuit's pattern instructions (See Fifth Circuit Pattern Instruction Nos. 1.37, 1.38, 2.06), counsel's performance in failing to object was objectively reasonable. Moreover, Hernandez has failed to articulate how any alleged deficiency in the instructions rendered the proceeding fundamentally unfair. The government introduced evidence that Hernandez made statements to Trooper Maza, Sergeant Noyola, and Agent Friday, establishing he knew he possessed marijuana in

16

the tractor-trailer, including the amount and location (4 R. 93-94, 51, 180). In light of this overwhelming evidence of knowledge, any deficiency in the instructions could not have rendered the proceedings fundamentally unfair.

## Failure to Move to Suppress

Hernandez also contends that counsel's performance was deficient because he did not move to suppress his statements and the marihuana on the ground that they were the product of a stop that was not justified by reasonable suspicion. "Defense counsel 'is not required automatically to file a suppression motion in every case involving evidence or statements obtained after a search; rather, counsel must use 'professional discretion in deciding whether there are sufficient grounds' for such a motion.'" *United States v. Chavez-Valencia*, 116 F.3d 127, 134 (5th Cir. 1997) (citation omitted). "Counsel is not required by the Sixth Amendment to file meritless motions." *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir. 1995). To demonstrate prejudice under *Strickland* based on an attorney's failure to move to suppress evidence, not only must Hernandez establish the existence of a meritorious Fourth Amendment claim, but he must also show he was denied a fair trial. *See Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586 (1986).

The record reflects that Trooper Maza stopped Hernandez because he observed a traffic violation (driving on the shoulder of the road) and that he issued Hernandez

a warning (Doc. 60, pp. 83-84). He subsequently obtained Hernandez' written consent to search the trailer (Doc. 60, p. 99). Trooper Maza unequivocally testified he observed Hernandez commit the traffic violation and stopped him based on it (Doc. 60, pp. 84, 87-89). This court credited this testimony and concluded: "Just so there won't be any question about it, the Court is concerned about stops of this type predicated upon dismal information and testimony that the agent gave. However, the ultimate matter was that whatever [Trooper Maza] may have been told or whatever he may have known or whatever information may have been to the knowledge of all people, all the agents who were investigating the matter, that the stop was conducted as a consequence of a traffic violation (Doc. 60, p. 104).

It is well-settled that "the subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do." *United States v. Gillyard*, 261 F.3d 506, 509 (5th Cir. 2001) (citing *Whren v. United States*, 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Here, as in *Gillyard*, Hernandez has presented no reasonable basis to challenge this district court's finding that a traffic violation was, in fact, committed by the driver of tractor/trailer. Thus, he has not shown that the stop of the tractor/trailer violated the Fourth Amendment. *Whren*, 517 U.S. at 810, 116 S.Ct. 1769 ("As a general matter,

18

the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

In addition, Sergeant Noyola testified a combination of factors were suspicious: He initially noticed the Mercedes, containing two young Hispanic men, exhibited New Jersey license plates and was following a tractor-trailer. Sergeant Noyola testified from his experience, drugs are commonly transported from South Texas border towns to northern cities, such as New York, and persons involved in transporting drugs commonly travel in tandem to protect the drugs. Thereafter, officers observed the Mercedes follow the tractor-trailer to various locations in the Brownsville/ Harlingen/McAllen area; first to a shopping center parking lot where Hernandez (driver of tractor-trailer) joined Soza (driver of Mercedes) and Soza subsequently went inside the Weiners Store for a few minutes. Thereafter, Hernandez and Soza followed each other to the Cage Road Exit where they swapped vehicles. Soza then took the tractor-trailer to PaulMex International Produce Shed where he backed the tractor-trailer into one of the sheds and remained there for 1 ½ hours. Soza and Hernandez subsequently met at a truck stop, and then followed each other to the Cage Road exit where they again swapped vehicles. Hernandez drove the tractor-trailer to a mechanic shop, and Soza followed close behind in the Mercedes. The tractor-trailer remained parked at the shop. Two days later, Hernandez and Soza

departed in the tractor-trailer from the shop. That same day, surveillance officers observed two men take two boxes from inside the trailer, two men place duffel bags in the sleeping compartment of the tractor, and men working on the tractor. Hernandez and Soza took the tractor-trailer to a truck stop where they weighed it and parked for about one hour before embarking on their trip. (Doc. 60, pp. 21-48, 61-62, 138-44, 144-45, 161-70). Based on the above, Sergeant Noyola's suspicion that criminal activity was afoot was reasonable. *See United States v. Chavez*, 281 F.3d 479, 484 (5th Cir. 2002) (reasonable suspicion is a particularized and objective basis for suspecting the person stopped of criminal activity and is based on the totality of the circumstances). Since Hernandez has failed to allege facts that would support a finding that the stop violated the Fourth Amendment, he has failed to allege facts that would support a finding that either counsel's performance was deficient or that he was prejudiced by the omission.

<u>Failure to Object to Out-of-Court Statements</u>

Finally, Hernandez contends he was denied his right to effective assistance of counsel when his attorney failed to object to an out-of-court statement by the agent that was allegedly offered for the truth of establishing his oral confession. Prior to Drug Enforcement Administration (DEA) Agent David Thomas Friday being called as a witness (Doc. 60, p.161), defense counsel cross examined three other officers as

20

to why they had not memorialized Hernandez's oral statements in their reports (Doc. 60, pp. 71, 134-36, 152-53). Agent Friday was the fourth witness to testify that Hernandez provided inculpatory oral statements on December 10, 1999 (Doc. 60, p.46, 49-52, 93-94, 145-47) He explained he did not report Hernandez' statements because he believed Sergeant Noyola included them in his report (Doc. 60, 176-77). He said he testified before the grand jury about Hernandez's statements on January 4, 2000; and, later, that same day, the prosecutor notified Agent Friday that he could not find Hernandez's statements in the reports (Doc. 60, p.177). He then reviewed the reports and saw that the statements had not been included. Accordingly, Agent Friday supplemented his report to include Hernandez's statements to the officers, after confirming the content of the statements with Sergeant Noyola (Doc. 60, pp. 176-78).

At trial, Agent Friday recited his grand jury testimony relating to Hernandez's statements (i.e., Hernandez told agents he had loaded 70 pounds of weed into the truck) (Doc. 60, p. 181). During cross-examination, defense counsel asked Agent Friday about other areas of his grand jury testimony in an effort to elicit discrepancies in his trial testimony (Doc. 60, pp. 185-87).

As evidenced by the context at trial in which reference to the out-of-court statements was initially made, Agent Friday's testimony that he reported the statements to the grand jury was not offered for the purpose of demonstrating that the

content of the statements was true; but to explain why the statements were included in the supplemental police report, rather than the initial one. The fact that the content of the statements was elicited in that context was permissible for the purpose of demonstrating that they were, in fact, the statements referred to by defense counsel on cross-examination as not having been recorded in the initial report. When out-of-court statements are offered into evidence for a purpose other than the truth of the matter stated, they are not hearsay. *See United States v. Narviz-Guerra*, 148 F.3d 530, 536 (5th Cir. 1998) (report of out-of-court call for help not hearsay because offered not for the truth of the matter, but to explain why agent resumed his investigation). Counsel's performance was therefore not deficient in failing to object to the testimony.

Assuming *arguendo*, that counsel's performance was deficient, Hernandez cannot demonstrate that the omission rendered the result of the proceeding unreliable. It is well-settled that the improper admission of hearsay is harmless if it is cumulative of other properly admitted evidence. *United States v. Hefferon*, 314 F.3d 211, 223 (5th Cir. 2002) (defendant's substantial rights not affected where challenged out-of-court statement was cumulative of properly admitted evidence); *see also United States v. Sotelo*, 97 F.3d 782, 797 (5th Cir. 1996) (admission of hearsay testimony was harmless where it was cumulative of other evidence admitted without objection). Since the

22

testimony was cumulative of other properly admitted testimony describing the content of Hernandez's oral statements, its admission without objection did not affect Hernandez's substantial rights.

Conclusion

Hernandez has failed to allege facts which, if true, would support a Sixth Amendment violation based on counsel's failure to object to this court's jury instructions; counsel's failure to file a motion to suppress or based on counsel's failure to object to out-of-court statements on the ground of hearsay. He petition should therefore be summarily denied. *See Bartholomew*, 974 F.2d at 41 (when the records and files of the case conclusively demonstrate that the petitioner is not entitled to relief, no hearing for purposes of § 2255 is necessary).

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

KATHLYN G. SNYDER
Assistant United States Attorney
910 Travis Street, Suite 1500
P.O. Box 61129
Houston, Texas 77208-1129
Texas Bar No. 07839300
Federal ID No. 14456

## CERTIFICATE OF SERVICE

I, Kathlyn G. Snyder, Assistant United States Attorney, do hereby certify that

a copy of the above Answer to Motion to Vacate under 28 U.S.C. §2255 and Brief has

been mailed on June 5, 2003 to:

Larry Warner
777 East Harrison
Brownsville, Texas 78520

_____
KATHLYN G. SNYDER
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,    §
    Plaintiff-Respondent,    §
        §
v.    §    CA. NO. B-02-167
        §    (CR. NO. B-00-003)
FERNANDO HERNANDEZ,    §
    Defendant-Movant.    §

## ORDER

Pending before this court is Petitioner's Motion to Vacate Sentence Pursuant
to 28 U.S.C. §2255. After having considered same, along with the response of the
United States, this court is of the view that relief should be denied for the reasons
stated in the United States' answer.

Signed this ____ day of _____, 2003.


_____
HONORABLE JOHN WM. BLACK
UNITED STATES MAGISTRATE JUDGE