IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | § | |
| Respondent, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-02-167 |
| FERNANDO HERNANDEZ, | § | |
| Petitioner. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Vacate Sentence pursuant to 28 U.S.C. §2255 (Docket No. 1) filed by Petitioner, Fernando Hernandez ("Hernandez"). Respondent, the United States, has filed its response (Docket No. 7). For the reasons stated below, the motion will be denied without hearing.

**I. Factual Background**

Hernandez was charged with conspiracy to possess with intent to distribute a quantity less than 50 kilograms of marijuana in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(D) (count one) and possession with intent to distribute approximately 37.27 kilograms of marijuana in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(D) and 18 U.S.C. §2 (count 2). Hernandez was found guilty by a jury on both counts. He then filed a motion for new trial which was denied and a judgment was imposed by United States District Judge Filemon B. Vela on July 11, 2000. Hernandez appealed and the Court of Appeals for the Fifth Circuit affirmed his conviction in an unpublished opinion dated July 10, 2001, with the final mandate issued on August 1, 2001. Hernandez timely filed the instant motion on August 30, 2002. On April 9, 2003, Hernandez was released from the United States Bureau of Prisons and is currently serving his three year term of supervised release.

## II. Claims of the Parties

### A. Hernandez

Hernandez states three grounds in support of his argument that he received ineffective assistance of counsel in violation of his Sixth Amendment right. Hernandez argues defense counsel failed to object to the jury instruction on aiding and abetting. Specifically, Hernandez argues that the instruction did not adequately explain the mens rea element. Secondly, Hernandez points to counsel's failure to object to the admission of his confession. Hernandez argues that the statement was hearsay when introduced during trial as part of witness testimony. The third basis, Hernandez contends, was counsel's failure to make a motion to suppress Hernandez's confession as well as the drug evidence. Specifically, Hernandez indicates that the stop made by the officers was not supported by reasonable suspicion and his warrantless arrest was not based on probable cause, in violation of his Fourth Amendment rights.

### B. United States

The United States argues that the jury instruction on aiding and abetting was consistent with the case law and with the Fifth Circuit's Pattern Jury Instructions in that it specifically explained the culpable mental state as noted in the record as follows:

> "Before a person may be held criminally responsible for the acts of others it is necessary that the accused deliberately, - and listen to these two words all right, and listen to these two words, - knowingly and willfully, knowingly and willfully associate himself in some way or manner with the crime and participate in it, with the intent to bring it about."
> Record on Appeal, No. 00-40815, vol. 4, at 225

As to the instruction on knowingly, the United States argues that it was also consistent with the case law and with the Fifth Circuit's Pattern Jury Instructions as follows:

2

" The first one I want to call to your attention is knowingly, and knowingly means that what you did voluntarily and purposely and intentionally. That what you did, you did because you wanted to do it and not by accident or mistake."
Record on Appeal, No. 00-40815, vol. 4, at 228

"And willfully means that you did what you did voluntarily and purposely and with the specific intent, with the specific intent to do something the law forbids."
Record on Appeal, No. 00-40815, vol. 4, at 229

As to the failure to object to the admission of an alleged hearsay statement, the United States argues that the statement, as introduced by DEA Agent Friday, a witness, was not offered for the truth of the matter and was therefore not hearsay. Agent Friday was questioned on direct examination by the United States in an attempt to clarify inconsistencies in reporting procedures as well as discrepancies between his grand jury testimony and his trial testimony.[1] As such, this evidence was not offered for the truth of the matter, but to explain why Hernandez's did not include Hernandez's confession in his initial report.

The United States also attacks Hernandez's evidence suppression argument by pointing directly to the testimony on record. DPS Trooper Maza testified that he observed a traffic violation and stopped Hernandez in order to give him a warning. Maza then obtained written consent from Hernandez to search the truck. Maza had also been informed of suspicious activity by DPS Sergeant Noyola. Noyola stated that he had formed a reasonable suspicion about the tractor-trailer driven by Hernandez when he observed Hernandez and another man, Soza, repeatedly switching vehicles (the tractor-trailer and a white Mercedes with New Jersey plates), following each other, making stops at retail establishments, a produce packing plant, a mechanic

---

[1] Agent Friday testified before the Grand Jury that Hernandez had made a confession. Later, the United States learned that Agent Friday had not noted this confession in his official report. After being informed of the oversight, Agent Friday made a supplemental report, which included Hernandez's confession. It was this discrepancy that Agent Friday testified to during the trial.

shop and along the side of the highway.

The United States urges that the Court previously and accurately concluded the stop was based on a traffic violation and thus not in violation of Hernandez's Fourth Amendment right. Further, the United States argues that the search was made subject to Hernandez consent and the resulting arrest was based on probable cause that Hernandez violated the law as a result of discovering the illegal drugs in the tractor-trailer.

## III. Analysis

### A. Jurisdiction

Although Hernandez has been released from physical confinement, he is still subject to three years supervised release. For purposes of 28 U.S.C. § 2255, a person "in custody" does not necessarily refer exclusively to one within the confines of a penal institution. Since Hernandez will be subject to the jurisdiction of the United States Board of Parole, he is still under restraints arising from the challenged conviction and has the requisite standing to bring this claim. *See Reed v. U.S.*, 471 F.2d 721 (5th Cir. 1973).

### B. Cause and Prejudice

Hernandez has framed his claim under the umbrella of ineffective assistance of counsel although it contains other constitutional sub-arguments. As such, he is not subject to the cause and prejudice test. The Supreme Court engrafted a "procedural bar" into § 2255 to ensure that such proceedings do not develop into a substitute for direct appeals. *See U.S. v. Frady*, 456 U.S. 152, 167, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (imposing the "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal). However, establishment of ineffective assistance of counsel is generally sufficient to defeat

procedural bar against raising an issue for first time on collateral review. *U.S. v. Seyfert*, 67 F.3d 544 (5th Cir. 1995), *see also U.S. v. Kallestad*, 236 F.3d 225 (5th Cir. 2000). As Hernandez has framed his claim under ineffective assistance of counsel, he is not subject to the cause and prejudice test.

### C. Ineffective Assistance of Counsel

The standard for ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). The defendant bears burden of showing by preponderance of the evidence that he was deprived of his right to effective counsel. *Clark v. Johnson*, 227 F.3d 273 (5th Cir. 2000). In order to prevail, the defendant in the case must show that his attorney's performance was, under all circumstances, unreasonable under the prevailing norms *(Strickland* at 687), and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different *(Strickland* at 694). Underlying the above two prong test is the standard of review that is to be employed. In evaluating defendant's claims of ineffective assistance of counsel, judicial scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Johnson v. Cockrell*, 2002 WL 1765392 (5th Cir. 2002).

In analyzing whether an attorney's performance was unreasonable, "defense counsel's conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel." *Smith v. Cockrell*, 2002 WL 31447742 (5th Cir. 2002). This is a high burden, as the attorney's strategy must be so poor that it robs the defendant of *any* opportunity to receive a fair trial. *Id.* In particular, decisions as to whether or not to call certain

5

witnesses to stand, whether to ask or refrain from asking certain questions, and the like, are tactical determinations, and errors, even egregious ones, in this respect, do not provide basis for postconviction relief. *U. S. v. Rubin*, 433 F.2d 442 (5th Cir. 1970).

The test in Strickland consists of two parts. If the court finds that the attorney's performance was unreasonable, it must still determine whether any prejudice resulted therefrom, in order to grant relief under the statute. To establish prejudice resulting from counsel's deficient performance, defendant must show that there is at least a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Neal v. Puckett*, 2002 WL 407382 (5th Cir. 2002). "[I]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding". *Strickland* at 693.

### 1. Failure to Object to Instructions

Hernandez argues that counsel's failure to object to the "aiding and abetting" instruction was unreasonable, as it failed to include the culpable mental state. The following analysis of case law, pattern jury instructions, and the actual trial record reveals that the jury instructions were not faulty and as such, there was no basis for defense counsel to object. Hernandez has failed to make an ineffective assistance of counsel claim as to this issue.

#### a. Instruction as to Possession with Intent to Distribute

The pattern jury instruction for the crime of possession with intent to distribute a controlled substance is as follows:

> Title 21, United States Code, Section 841(a)(1), makes it a crime for anyone to knowingly or intentionally to possess a controlled substance with intent to distribute.

_____ is a controlled substance within the meaning of this law.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant knowingly possessed a controlled substance;

Second: That the substance was in fact_____;

Third: That the defendant possessed the substance with intent to distribute it; and

Fourth: That the quantity of the substance was at least _____;

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

PATTERN JURY INSTRUCTION OF THE DISTRICT JUDGES ASSOCIATION OF THE FIFTH CIRCUIT, CRIMINAL CASES, INSTRUCTION NO. 2.87 (2001).

The above pattern instruction is representative of the applicable case law in this area. The essential elements of possession with intent to distribute narcotics consist of: (1) possession; (2) knowledge; and (3) an intent to distribute the drugs. *U.S. v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994), *see also United States v. Molinar-Apodaca*, 889 F.2d 1417, 1423 (5th Cir.1989).

As part of the jury instructions given by Federal District Judge Filemon B. Vela, the following excerpt relates specifically to the crime of possession with intent to distribute.

"In order for you to find the defendant guilty of Count Number 2 - and remember this is a predicate offense for Count Number 1. That in order for you to find him guilty on Count Number 2 and/or Count Number 1 - and you defer on Count Number 1 until I explain to you the law on the matters of conspiracy - you must find that the defendant - that the Government has proven all of the three following elements. All of them. Not some, not most, but all.

Number 1, that the defendant, Fernando Hernandez, knowingly possess, as I have defined possession to you the marijuana in question. That in fact the substance was in fact more

or less 82 pounds of marijuana. In addition, to that, that he possessed the substance, as I have defined possession to you, with the intent to distribute."

Record on Appeal, No. 00-40815, vol. 4, at 229-230

### b. Instruction as to "Knowingly"

The pattern jury instruction for the term "knowingly", as used in various crimes, including possession with intent to distribute a controlled substance, consists of the following:

> The word "knowingly" as that term has been used from time to time in these instruction, means that the act was done voluntarily and intentionally, not because of mistake or accident.
>
> You may find that a defendant has knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.
>
> PATTERN JURY INSTRUCTION OF THE DISTRICT JUDGES ASSOCIATION OF THE FIFTH CIRCUIT, CRIMINAL CASES, INSTRUCTION NO. 1.37 (2001).

The above pattern instruction is representative of the applicable case law in this area and has been deemed the "correct" definition of "knowingly". *See United States v. Aggarwal*, 17 F.3d 737, 744 (5th Cir. 1994) and *U.S. v. Brown*, 186 F.3d 661, 665 (5th Cir. 1999).

As part of the jury instructions given by Federal District Judge Filemon B. Vela, the following excerpt relates specifically to the mental state of "knowingly".

> "Now we come to two terms that I earlier emphasized and they are very important because, you see, it can appear on the face of things in our country that a person committed the crime but if that person did not possess the required state of mind we can't find that person guilty.

8

The first one I want to call to your attention is knowingly, and knowingly means that what you did voluntarily and purposely and intentionally. That what you did, you did because you wanted to do it and not by accident or mistake."

Record on Appeal, No. 00-40815, vol. 4, at 228.

### c. Instruction as to "Aiding and Abetting"

The pattern jury instruction for aiding and abetting, also known as agency, is as follows:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds that the defendant is responsible for the acts and conduct of such others person just as though the defendant had committed the acts or engaged in such conduct.
>
> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
>
> Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed ro aided and abetted the crime unless you find beyond a reasonable doubt that the defendant twas a participant and not merely a knowing spectator.
>
> In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
>
> PATTERN JURY INSTRUCTION OF THE DISTRICT JUDGES ASSOCIATION OF THE FIFTH CIRCUIT, CRIMINAL CASES, INSTRUCTION NO. 2.06 (2001).

The above pattern instruction is representative of the applicable case law in this area. In *U.S. v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980), the court held that the guilt of an accused in a

criminal case may be established, without proof that he personally did every act constituting the offense alleged as the law recognizes that anything a person can do for himself may also be accomplished through the direction of another person as his agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise. *See also U.S. v. Casilla*, 20 F.3d 600 (5th Cir. 1994), *United States v. Garcia*, 242 F.3d 593, 596 (5th Cir.2001).

As part of the jury instructions given by Federal District Judge Filemon B. Vela, the following excerpt relates specifically to aiding and abetting.

> "Under the laws of the United States you don't have to be the person who committed the crime to be as guilty as ... the one who actually committed it. I like to introduce the law of aiding and abetting through a Spanish saying we have: "He who holds the cow's leg is just as guilty as the one who shot the cow in the head." Why? Because if somebody hadn't held the cow in place, it wouldn't have been there for somebody to shoot it in head.
>
> You see, this is so because if another person is acting under the direction of the defendant or the defendant joins another person and performs acts with the intent to commit a crime, then the law holds that person responsible for the acts and conduct of such other persons just as though he had committed the acts or engaged in such conduct.
>
> But now we are going to come to something real important that is really in every criminal case, but certainly in this one. Before a person may be held criminally responsible for the acts of others it is... necessary that the accused deliberately - and listen to theses two words. all right, and listen to these two words - knowingly and willfully, knowingly and willfully, associate himself *in some way or manner with the crime and participate in it* with the intent to bring it about.
>
> And mere presence, just because you are where a crime is being committed, does not make you guilty. Or mere knowledge, just because you know a crime is being committed, does not make you guilty. That is not sufficient to establish that a person whether directed, aided or abetted a crime unless you find beyond a reasonable doubt that the defendant was a knowing and willful, knowing and willful, participant and not just a spectator.
>
> Before a person may be held criminally responsible for the acts of others it is necessary that the accused deliberately, - and listen to these two words all right, and listen to these two words, - knowingly and willfully, knowingly and willfully associate himself in some

way or manner with the crime and participate in it, with the intent to bring it about."
Record on Appeal, No. 00-40815, vol. 4, at 224-225

### 2. Failure to Object to Admission of Hearsay Evidence

Hernandez argues that his attorney failed to object to an out-of-court statement made by a witness, DEA Agent Friday, during his trial testimony and was therefore denied effective assistance of counsel.

Agent Friday, the case agent, was called to the stand during the trial in order to testify regarding a discrepancy in reporting procedures that had been revealed after his Grand Jury testimony had been taken. Agent Friday testified before the Grand Jury as to various statements made by Hernandez, including Hernandez's oral confession. After testifying, Agent Friday was informed by the prosecutor that he failed to include the confession in his official report. The following excerpt is taken from the direct examination of Agent Friday during the trial regarding his Grand Jury testimony, as he is clarifying the discrepancy.

```
16      BY MR. MARTINEZ:
17  Q   I am going to show you the Grand Jury testimony which was
18      taken on January 4th, the year 2000. I am going to point
19      you to Page 10, Line 143. Mr. Esquivel asked you a
20      question. Could you go ahead and read the question and
21      answer?
22      MR. ESQUIVEL: It was Mr. Lara
23      BY MR. MARTINEZ:
24  Q   I am sorry. Mr. Lara asked you the question and you
```

11

25    answer that statement. Could you go ahead and read that?

Record on Appeal, No. 00-40815, vol. 4, at 180

5 A    AGENT FRIDAY: He said, "Okay. Did either one of these individuals make

6    any statement?"

7    And I said, " Mr. Hernandez said that he had loaded

8    the marijuana on the truck."

9    And then he asked, "Okay. And did he tell you how

10    much he had loaded in there?"

11    And I said, "He said that he had loaded 70 pounds of

12    weed."

Record on Appeal, No. 00-40815, vol. 4, at 181

The Court then comments on Agent Friday's failure to include Hernandez's confession in his report.

11    THE COURT: Well, isn't that shoddy law enforcement

12    when people don't write down in their reports that somebody

13    made a statement?

14    THE WITNESS: Yes, sir.

15    THE COURT: It is, isn't it?

16    THE WITNESS: Yes, sir.

17    THE COURT: What about when three people say that

| | |
|---|---|
| 18 | statement were made to them by a person and they didn't put |
| 19 | it in their reports? Is that three times shoddy? |
| 20 | THE WITNESS: Yes, sir. I think everybody was under |
| 21 | the impression that the other person was going to write the |
| 22 | report. |

Record on Appeal, No. 00-40815, vol. 4, at 184

Agent Friday's trial testimony above was elicited on direct examination in reference to the "reporting discrepancy" issue, which had been raised earlier in the trial via defense counsel's cross examination of other witnesses. Agent Friday's statement was not offered for the truth of the statement and was therefore not hearsay. Even assuming that the statement was hearsay, Hernandez has not shown that defense counsel's failure to object meets the two part test in *Strickland*.

### 3. Failure to Make a Motion to Suppress

Hernandez argues that both his confession and the physical drug evidence should have been excluded as they were obtained in violation of the Fourth Amendment and defense counsel was ineffective for failing to make a motion to suppress. Hernandez contends that the initial stop was not supported by any reasonable suspicion and therefore, all evidence that resulted from that stop should not have been admitted.

The Fourth Amendment protects individuals from unreasonable search and seizure. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). It is well established that an

investigatory stop, or brief seizure must be supported by reasonable suspicion, while a full scale arrest must be supported by probable cause. *See U.S. v. Watson*, 953 F.2d 895 (5th Cir. 1992) Traffic stops are considered more similar to investigative detentions than formal arrests. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). As such, the courts analyze the legality of the stop under the standard set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Terry standard is a two-tiered reasonable suspicion inquiry which asks whether the officer's action was justified at its inception, and whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *U.S. v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001).

In this case, Hernandez was not merely suspected of illegal behavior, but was actually observed by DPS Trooper Maza, as Hernandez was committing a traffic violation and was stopped on that basis.

> 20 A   TROOPER MAZA:   I stopped him for a traffic violation, sir.
>
> 21 Q   PROSECUTOR:     And what was the traffic violation?
>
> 22 A   TROOPER MAZA:   Driving on improved shoulder was prohibited.

Record on Appeal, No. 00-40815, vol. 4, at 83


However, Hernandez argues that although he committed a traffic violation, it was merely used as a pre-text to make the stop and was therefore illegal. The Fifth Circuit, in *U.S. v. Escalante*, 239 F.3d 678 (5th Cir. 2001), has addressed this specific issue by holding that a traffic stop, even if pre-textual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred", citing *Whren v. United States*, 517 U.S.

806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop. *Escalante* at 680-681.

The record reflects that DPS Trooper Maza conceded that he had received prior information from Sergeant Noyola about Hernandez.

> 14 A   TROOPER MAZA:   I was contacted by Sergeant Noyola to stop a
> 15         tractor-trailer that was traveling north on US 77 north of
> 16         Combes. I proceeded to stop that tractor-trailer. When I
> 17         got behind it, I noticed the traffic violation. I proceeded
> 18         to pull him over, identify the driver.
> 19 Q   PROSECUTOR:    Let me stop you. Why did you stop him?
> 20 A   TROOPER MAZA:   I stopped him for a traffic violation, sir.

Record on Appeal, No. 00-40815, vol. 4, at 83

> 4 A   TROOPER MAZA:   I was contacted by Sergeant Noyola to be on the lookout
> 5         for this particular tractor-trailer, that it might have
> 6         Contraband inside it.

Record on Appeal, No. 00-40815, vol. 4, at 85

As a result of the testimony given by DPS Trooper Maza and Sergeant Noyola, the District Court commented on the constitutionality of the stop, although no suppression motion had been made.

> 17       THE COURT: Just so there won't be any question

| | |
|---|---|
| 18 | about it, the Court is concerned about stops of this type |
| 19 | predicated upon dismal information and testimony that the |
| 20 | agent gave. However, the ultimate matter was that whatever |
| 21 | he may have been told or whatever he may have known or |
| 22 | whatever information may have been to the knowledge of all |
| 23 | people, all the agents who were investigating the matter, that |
| 24 | the stop was conducted as a consequence of a traffic |
| 25 | violation. |

Record on Appeal, No. 00-40815, vol. 4, at 104

Based on the above, there was no violation of Hernandez's Fourth Amendment right. Although the stop may have been pre-textual, there is no doubt that Hernandez was stopped for a legitimate traffic violation. However, even if the stop had been illegal, not all evidence that results from an illegal stop is excludable.

The well known "fruit of the poisonous tree doctrine" holds that all evidence derived from an illegal search or seizure must be suppressed, unless the government shows there was a break in the chain of events sufficient to refute the inference that the evidence was the product of the Fourth Amendment violation. *Brown v. Illinois*, 422 U.S. 590, 602-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975). Evidence that is not obtained as a result of police illegality, but rather through a legal "independent source", need not be suppressed. *See Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). Consent to search may, but does not necessarily, dissipate the taint of a Fourth Amendment violation. *U.S. v. Portillo-*

*Aguirre*, 311 F.3d 647, 658 (5th Cir. 2002). The admissibility of the challenged evidence turns on a two-pronged inquiry of whether the consent was voluntarily given and whether it was an independent act of free will. *United States v. Chavez-Villarreal*, 3 F.3d 124 (5th Cir.1993).

In this case, Trooper Maza asked Hernandez if he could conduct a search of the tractor-trailer. Hernandez signed a written consent as evidenced in Government Exhibit 26, "Form HQ-36 Consent to Search" from the Department of Public Safety.

> 2 A   TROOPER MAZA: I explained to Mr. Hernandez why I stopped him. I told
> 3         Mr. Hernandez that he would be receiving a warning for the
> 4         traffic violation. He understood why I stopped him. He
> 5          signed the traffic violation.
> 14 Q   PROSECUTOR:     And did you obtain a consent to search from him?
> 15 A   TROOPER MAZA:   Yes, sir.
> 16 Q   PROSECUTOR:     Was it oral or written?
> 17 A   TROOPER MAZA:   It was a written consent to search.
> 18 Q   PROSECUTOR:     And did he sign it?
> 19 A   TROOPER MAZA:   Yes, sir, he did.
>
> Record on Appeal, No. 00-40815, vol. 4, at 86.

The marijuana evidence was obtained after a search incident to Hernandez's consent as well as a canine alert. There are no facts in the record, nor has Hernandez argued, that the consent was obtained against his will or involuntarily.
.

In summary, there was no violation of Hernandez's Fourth Amendment rights as to an illegal stop, search or arrest. Trooper Maza had probable cause to believe a traffic violation had occurred and stopped Hernandez on that basis. Although Trooper Maza may have been informed as to Hernandez's suspicious drug related behavior, as observed by the DEA, the Fifth Circuit has condoned such pre-textual stops. The initial stop, as analyzed above, was not the result of police illegality. Even if this was not the case, Hernandez's written consent qualifies as break in the chain of events thereby refuting the inference that the evidence was obtained as a product of a Fourth Amendment violation.

Hernandez has framed his argument under an ineffective assistance of counsel claim. As such, even if he was able to show that a violation of his rights occurred, he must also show that his attorney's failure to file a motion to suppress meets the two part test in *Strickland*. However, as there was no violation, there was no basis for Hernandez's counsel to make the suggested motion.

**IT IS THEREFORE ORDERED** that Hernandez's Motion to Vacate Sentence, made pursuant to 28 U.S.C. § 2255 be **DENIED WITHOUT HEARING**.

A hearing is not required on a petitioner's motion to vacate sentence on patently frivolous claims or those which are based upon unsupported generalizations, nor is a hearing required where petitioner's allegations are affirmatively contradicted by record. *U.S. v. Guerra*, 588 F.2d 519 (5th Cir. 1979). Hernandez has failed to make a claim as to ineffective assistance of counsel,

as evidenced by the analysis above and the trial record.

DONE in Brownsville, Texas, on this __16th__ day of __July__, 2003.

_____
Filemon B. Vela
United States District Judge